# IN THE COURT OF APPEALS OF IOWA

No. 21-0402
Filed June 16, 2021

**IN THE INTEREST OF K.C.,**
**Minor Child,**

**B.B., Mother,**
    Appellant,

**J.C., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Webster County, Joseph L. Tofilon, District Associate Judge.

A mother and father separately appeal from the termination of their parental rights to their child. **AFFIRMED ON BOTH APPEALS.**

Alesha M. Sigmeth Roberts of Sigmeth Roberts Law, PLC, Clarion, for appellant mother.

Mallory J. Bartlett of Bartlett Law, PLLC, Waukee, for appellant father.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Doug Cook, Jewell, attorney and guardian ad litem for minor child.


Considered by Doyle, P.J., May, J., and Mahan, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**MAHAN, Senior Judge.**

A mother and father separately appeal from the termination of their parental rights to their child, K.C., born in 2017.[1] Both contend the State failed to prove the grounds for termination cited by the juvenile court, the court should have granted additional time to work toward reunification, termination is not in the child's best interests, and the department of human services failed to make reasonable efforts toward reunification. We affirm on both appeals.

## I. *Background Facts and Proceedings*

This family came to attention of the department of human services in 2016, prior to K.C.'s birth, due to concerns about "substance use by both parents." The mother's older children were removed from her care, and services were initiated. K.C. was born in December 2017, and in January 2018, the mother's older children were returned to her care under department supervision. For the next several months, the mother was "cooperative with services," and therefore, the department "did not intervene in regards to [K.C.] during that time."

In May 2018, the mother's older children were again removed from her care when the department discovered the father, a registered sex offender, was residing at the mother's home and taking care of the children.[2] The father had recently been arrested and charged with possession of drug paraphernalia. The mother "failed to attend drug testing" in June and July, and she admitted using methamphetamine "on and off . . . for the past several months." The mother stated

---

[1] The parental rights of the child's legal father, the mother's husband, were also terminated.

[2] The father is allowed contact with K.C., but not the mother's two older children, who have a different father.

she was "giving up" as to her older children and "moving out of state once her rights were terminated."[3]  K.C. was removed from the parents' care and placed in relative care.

During visits, the father displayed hostility toward the case providers, claiming the department was "out to get them."  He disagreed with having to submit to drug tests because "the allegations weren't against him, but were against [the mother]."  Even so, the child was returned to the father's care for a trial home placement.  Approximately one week later, the father tested positive for methamphetamine and the child was removed again.  In December 2018, the child was adjudicated in need of assistance but was allowed to return to the parents' care for another trial home placement.

By the time of the April 2019 dispositional hearing, the parents were making progress toward reunification and the child had "seemingly done well" in their department-supervised care.  The father had provided negative drug test results, but the mother had been "evasive" and unresponsive to requests for drug tests. Despite their various substance-abuse and mental-health diagnoses, the parents maintained they had "no need" for substance-abuse or mental-health treatment services.  And the father "continue[d] to argue about testing."  This remained the status quo until October 2019, when one of the mother's rare appearances for a drug screen resulted in a positive test for methamphetamine and the father refused to submit to a test.  The parents also disputed the validity of their prior positive tests and demanded the case be closed.  K.C. was again removed from their care,

---

[3] In September 2018, the mother consented to termination of her parental rights to those children.

but the following month, the child was returned to the father's care under department supervision with the requirement that the child not be left unsupervised with the mother.

After that, any progress that had been made by the parents seemed to unravel. The department caseworker struggled to make contact with them, pleaded with them to attend drug tests, and offered options for drug testing to accommodate their work schedules and the child's daycare hours. The caseworker was "at a loss of what to do," noting the "safety plan has been broken, the contract of expectations is not being followed, drug testing has not been complied with, releases won't be signed [for dental care for the child], etc." The department also learned the child was being left alone with the mother. In February 2020, the court entered an order removing the child from the father's care and placing the child in family foster care, where she has remained.

In a June 2020 review order, the court noted, "The most concerning aspect of this case is the parents' lack of honesty. It is unclear how this case is going to progress if the parents do not start being truthful with the providers and the Court." The mother had continued to test positive for methamphetamine but claimed the tests were faulty. The father shaved his hair to avoid hair stat tests, and he acknowledged a sweat patch would be positive for methamphetamine. By December 2020, the parents had effectively "quit testing"; the mother had not tested since June, and the father had not tested since August. The State initiated termination proceedings.

The termination hearing took place over four days in February 2021. The record before the juvenile court indicated the child had been removed since

February 2020, and any visits with the parents had been fully supervised. The parents were "no shows" for nearly all drug screens between August 2020 and January 2021. The father had not followed through with mental-health or substance-abuse treatment, and he tested positive for amphetamines and methamphetamine in December 2020. The department caseworker described the father as "wanting to argue about anything and everything," including that he and the mother were complying with their contract of expectations, which the caseworker reported was "simply not true." The mother completed a substance-abuse evaluation in December 2020, in which she reported having "not used substances since 2016," and then she "no showed" her follow-up appointment. Despite their lack of active engagement in services, the parents requested a six-month extension, believing the child could be returned to one or both parents by that time.

The guardian ad litem and department caseworker recommended termination of parental rights. The guardian ad litem noted that "neither parent has been forthcoming with DHS or the court" and "[a]lmost every problem is addressed by accusing another involved party of being wrong and blaming faulty tests and evaluations." The guardian ad litem opined the child "cannot be returned today or in the immediate future." The department noted the child was "thriving" and "bonded" to her foster family, which was a pre-adoptive placement.

In March 2021, the court entered its order terminating parental rights pursuant to Iowa Code section 232.116(1)(h) (2020). The mother and father separately appeal.

## II.    *Standard of Review*

Appellate review of termination-of-parental-rights proceedings is de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019).  Our primary consideration is the best interests of the child, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the child's safety and need for a permanent home.  *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

## III.    *Discussion*

The parents both challenge the sufficiency of the evidence supporting the grounds for termination cited by the juvenile court.  They do not contest the child is three years of age or younger, has been adjudicated a child in need of assistance, and has been removed from the parents' physical custody for at least six of the last twelve months.  *See* Iowa Code § 232.116(1)(h)(1)–(3).  But they claim the State failed to show by clear and convincing evidence the child not be returned to either parent at the time of the termination hearing.  *See id.* § 232.116(1)(h)(4).  Based on the facts detailed above, we have little hesitation concurring with the juvenile court's assessment that the child could not be returned to the care of either care at the time of the termination hearing.  And we expressly disagree with the father's contention that "[a]ny safety concerns stemmed from [the mother's] substance issues, not [his]," where he repeatedly made excuses for the mother's drug use, allowed her to have unsupervised contact with the child contrary to court orders, and failed to take accountability for his own positive drug tests.

The parents also challenge the court's failure to grant them an additional six months to work toward reunification.  To the contrary, the guardian ad litem gravely

stated, "After listening to the testimony, I am more convinced than ever that [the parents] will not be making any changes which would matter" if granted a six-month extension. The guardian ad litem elaborated:

> I was hoping the parents would show some indication that additional time would help. Instead, they doubled down on the arguments they have been making for years. [The mother] admits she is dealing with the same issues that have existed since DHS became involved with her over 4 years ago. [The father] continues to deny any issues exist other than those caused by others who wrongfully involved themselves with his child.
> Legally, what I need to recommend six more months was a reason to believe it would work to reunify the family. . . .
> . . . .
> The child has been out of the home for over a year. Several things need to improve before she can be returned. There is no reason to believe that either parent will show any improvement in the next six months based on their own testimony.

Similarly, the juvenile court was "unable to find any likelihood that the need for removal of the child will no longer exist at the end of an additional six-month period," noting, "[t]he child was removed from the parents' custody and care over 12 months ago and they are no closer to reunification than they were on the date of the removal." We concur in the court's finding. *See In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010) ("It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child."). Under these circumstances, a six-month extension was not warranted. Iowa Code section 232.116(1)(h) was satisfied.

Termination also must serve the child's best interests. *See* Iowa Code § 232.116(2). The department caseworker opined "[t]he physical, mental, and emotional needs of [the child] cannot be met by her parents, but they have been

met and continue to be met by her foster parents." The caseworker "noticed a significant difference in [K.C.]'s personality, specifically that she is happy and seems like a completely different child since being placed with the [foster] family," whereas "[t]he parents are no closer to reunification today than they were when [K.C.] was originally removed over a year ago." The parents are unable to assume custody of the child now or at any time in the foreseeable future. There is no reason to delay the child the permanency she needs and deserves. For the reasons set forth above, we conclude termination is in the child's best interests, and no permissive statutory exception should be applied to preclude termination.

Lastly, the parents contend the department of human services failed to make reasonable efforts toward reunification. Our courts have recognized the State must show reasonable efforts toward reunification "as a part of its ultimate proof" that grounds for termination exist. *See*, *e.g.*, *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). This issue was raised on the eve of the termination hearing,[4] and the department's report to the court noted, "This worker feels that specifically due to the reasonable efforts filing that was filed that the parents are specifically trying to manipulate certain situations so that they can have points to argue at the termination hearing." The record supports the caseworker's hunch. Throughout this case, several different caseworkers went to great lengths to provide services and opportunities for the parents to make progress toward reunification, but the parents fought those efforts at every turn. As the juvenile court noted, the mother's "strategy with dealing with the department has been to ignore it and hope it goes

---

[4] For that reason, we elect to bypass the State's error-preservation claim and proceed to the merits of the parents' claim.

away" and the father "believes [he] is a victim of a vast DHS conspiracy to kidnap children from their parents." The parents could only be successful or participate in additional services if they first completed the necessary evaluations and started attending treatment. We find the department made reasonable efforts toward reunification.

Having addressed the issues raised on the parents' appeals, we affirm the termination of the mother and father's parental rights.

**AFFIRMED ON BOTH APPEALS.**